Wilbert C. HAGGINS,
Petitioner-Appellant,

v.

WARDEN, FORT PILLOW STATE
FARM, Respondent-Appellee.

No. 82–5462.

United States Court of Appeals,
Sixth Circuit.

Argued March 24, 1983.

Decided Aug. 11, 1983.

Certiorari Denied Jan. 16, 1984.
See 104 S.Ct. 980.

Marvin J. Brode (argued), Memphis, Tenn., for petitioner-appellant.

Jennifer Helton Small, Asst. Atty. Gen. (argued), William M. Leech, Jr., Atty. Gen. of Tenn., Nashville, Tenn., for respondent-appellee.

Before KENNEDY and JONES, Circuit Judges, and GILMORE, District Judge.*

GILMORE, District Judge.

This appeal from the denial of a writ of habeas corpus raises significant issues concerning exhaustion of state remedies, the binding effect of state court findings under 28 U.S.C. § 2254 and *Sumner v. Mata II,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982), and the accused's right to confront witnesses guaranteed in the Sixth Amendment of the Constitution of the United States. For the reasons set forth below, we affirm the district judge's denial of the writ.

I

Petitioner Wilbert Haggins was convicted by a state court jury of two counts of first degree criminal sexual conduct for the forcible rape of a four year old child. The conviction was affirmed by the Tennessee Court of Criminal Appeals, and the Tennessee Supreme Court denied leave to appeal.

The testimony showed that the child, Camilla, who was the niece of petitioner's common-law wife, had been left in petitioner's custody on the day in question. Petitioner stated that he left the girl at home alone while he went to the store, and when he returned, he discovered that she had inserted a pencil in her vagina and was bleeding. Petitioner took the child to the emergency room of a local hospital.

Two nurses, Janice Sanford and Wanda Rideout, testified that they saw the child when she first arrived in the emergency room. They described the girl's condition as "critical." Her garments were blood soaked.

Subsequent examinations by three physicians revealed multiple lacerations of the vagina and abrasions about the anal opening. Dr. Noel Frizzell testified that the rectal wounds were consistent with sexual penetration, but could not say that they were not caused by the insertion of a pencil. Dr. William Wheeler stated that it was unlikely that the wounds could have been caused by a pencil. Dr. Robert Sauter testified that it was unlikely that the lacerations were caused by a pencil, but later stated that a pencil could have caused the injuries.

Although petitioner Haggins maintained that the wounds were caused by the child's insertion of a pencil into her vagina, police officers were unable to find the pencil he described in the apartment where the child was hurt. There was testimony that the child had previously placed a clothes pin in her vagina.

The state trial judge held a separate hearing to determine whether the four year old child was competent to testify. At that hearing, the child continuously stated that she would not tell the truth and, after full consideration, the judge ruled that she was not competent to testify.

Over petitioner's objections, the state trial court admitted the testimony of two nurses and a police officer relating statements made by the child. Janice Sanford testified that she asked the child "Who hurt you?", and the child responded "Wilbert" (petitioner). Both Wanda Rideout and Sanford testified that the child told them that Wilbert had "put her in the bed and put his worm in her." Sergeant Pyle testified that,

* The Hon. Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

when he asked the child who hurt her, she responded "Wilbert" and said he whipped her, put her on the bed and put her in the tub.

Haggins appealed his conviction to the Tennessee Court of Criminal Appeals, claiming that the admission of the testimony of the two nurses and the police officer as to what the child had told them violated his Sixth Amendment right of confrontation.

The Tennessee Court of Criminal Appeals agreed that the statements constituted inadmissible hearsay, and did, in fact, violate petitioner's right to confrontation, but affirmed the conviction on the ground that their admission was harmless error.[1]

The Tennessee Supreme Court denied leave to appeal and concurred only in the result of the appellate court.

Haggins then filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Tennessee. The petition raised two claims. First, he alleged that the admission of the hearsay statements of the child violated his Sixth Amendment right to confrontation and constituted serious and prejudicial error. Second, petitioner claimed that he was denied his right to equal protection under the Fourteenth Amendment because the state appellate court ruling was inconsistent with the holding in an earlier case.[2] Petitioner contends that in a case which was almost identical to this one, the Court of Criminal Appeals held that the admission of similar hearsay declarations mandated reversal.[3]

The district court initially referred this matter to a magistrate who recommended the issuance of the writ. The district judge

1. The Tennessee Court of Criminal Appeals held: "On the second issue, that proof of the child's statements made after the crime was improper, we have held in a similar case that where a child who was the victim of anal rape did not testify, evidence of her account of the crime made to her mother and a police officer was hearsay and could not be admitted. *State v. Williams*, 598 S.W.2d 830 (Tenn.Cr.App. 1980). We held there that it could not be admitted to corroborate the victim's testimony since she did not testify or under the 'fresh complaint' exception to the hearsay rule, or as part of the res gestae or excited utterance exception. And we concluded the testimony denied the accused's right to confront the witnesses guaranteed in the Sixth Amendment to the Constitution of the United States and Article 1, Section 9, of the Constitution of Tennessee. We think in the case before us the child's statements, so far as they went beyond a report that a crime occurred and incriminated appellant were inadmissible for the same reasons.

We are of the view, however, the admission of this testimony was harmless beyond a reasonable doubt when viewed in the overall context of the evidence." Jt.App. at 71.

2. In his petition for writ of habeas corpus, Haggins stated: "Your petitioner further states that his rights have been violated, under Section I of the Fourteenth Amendment of the Constitution of the United States, and that he was denied equal protection under the law. Petitioner would show that in February of 1980, the Tennessee Court of Criminal Appeals, in the case of *State v. Williams*, 598 S.W.2d 830, had an almost identical situation in that the defendant was accused of sexual misconduct with a four year old child and the defendant, Williams, was convicted, by a Shelby County jury, upon the hearsay as to what the child had said. The Tennessee Court of Criminal Appeals, in the Williams case, held that the utterance was hearsay, highly prejudicial and remanded the case for a new trial; however, several months later, in petitioner's appeal to the same Tennessee Court of Criminal Appeals, the court, in an unpublished opinion while holding that the statement . . . against the petitioner was error, the court, in an astounding opinion, said that the error was harmless and the court failed . . . to logically differentiate between the Williams case and petitioner's case." Jt.App. at 63–64.

3. The case petitioner referred to, *State v. Williams*, 598 S.W.2d 830 (Tenn.Cr.App.1980), also involved the rape of a child. The defendant, a baby-sitter, was with the child until 4:30 p.m. on the day in question. The child was in the custody of her stepfather from 4:30 p.m. to 6 p.m. At approximately 6:30 p.m., the child's mother discovered the injuries. The court allowed the mother and a police officer to testify as to what the child told them of the assault. The Tennessee Court of Criminal Appeals ruled that the evidence indicated that either the defendant or the stepfather could have been the perpetrator, and the admission of the child's hearsay statement violated the defendant's right to confrontation. The court also ruled that the statements were inadmissible under an excited utterance exception to the hearsay rule because of the lapse of time between the event and the lack of evidence of continued excitement. The court reversed the conviction.

rejected the magistrate's findings and dismissed the petition.

This appeal followed.

## II

Before we can proceed to the merits of petitioner's claims, this court must first determine whether all state court remedies have been exhausted. Under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), habeas petitions containing both exhausted and unexhausted claims (often referred to as mixed petitions) must be dismissed by district courts. This court's recent decision in *Bowen v. Tennessee,* 698 F.2d 241 (6th Cir.1983) (en banc), applied this total exhaustion rule to cases pending on appeal at the time *Rose* was decided. We held that the exhaustion requirement may not be waived and that this Court must remand mixed petitions with directions to dismiss, even where the district court had reached the merits of the exhausted claims.

■ In determining whether claims contained in a petition for a writ of habeas corpus have been exhausted, the federal court must find that the habeas petitioner has "fairly presented" to the state court the "substance" of his federal claims. *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). A claim is not "fairly presented" merely because all of the facts necessary to support the federal claim were before the state court or because the constitutional claim seems self evident. *Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982).

In the district court and in his brief on appeal, appellee contended that the equal protection claim was not "fairly presented" to the state courts, and, thus the petition contained both exhausted and unexhausted claims.[4] Petitioner's equal protection claim was based on the argument that the state appellate court's ruling that the admission of the hearsay declarations of the child was harmless error was inconsistent with that court's earlier ruling in *State v. Williams, supra.* Petitioner's brief to the Tennessee

Court of Criminal Appeals did argue that the instant case was identical to *Williams,* but did not explicitly label it as an equal protection argument.

■ This Court cannot conclude that every time a litigant cites analogous case law, the state court should perceive an equal protection claim. We therefore find that petitioner did not fairly present an equal protection argument to the state court.

■ Although a finding that a habeas petitioner has not exhausted all state remedies requires a remand for dismissal, *Bowen v. Tennessee, supra,* this total exhaustion rule does not mandate dismissal here. In the instant case, at oral argument, petitioner conceded that his equal protection claim was without legal merit, the position advanced by the state. We find the equal protection claim is patently frivolous. To suggest that a person is denied the equal protection of law because different panels of the Tennessee Court of Criminal Appeals differed on whether the admission of certain evidence was harmless error or not is ludicrous. In this circumstance, it is as if the purported issue had never existed. To remand this case to the district court for dismissal so that Haggins can file a new state petition on grounds which all concede to be non-existent would require exhaustion of a nullity and would do the state courts a disservice.

■ Indeed, an attorney is forbidden by the American Bar Association Code of Professional Responsibility to institute frivolous actions. Disciplinary Rule 7–102(A)(2) of the Code provides that a lawyer shall not: "Knowingly advance a claim ... that is unwarranted under existing law..." Therefore, if petitioner's counsel returned to state court and asserted his equal protection claim, he would be subject to professional discipline. By the same token, he could not suggest to petitioner that he file a frivolous claim.

We therefore find there has been exhaustion and that there is no procedural bar to

---

4. Petitioner's confrontation clause claim was presented to the state courts, and there is no

argument that this claim has not been exhausted.

our consideration of the merits of petitioner's claim that his right to confrontation was violated by the admission of the hearsay declarations of the child victim.

### III

■ We must next determine the effect of the state appellate court's ruling that the statements were inadmissible hearsay and violated petitioner's right to confrontation. Under 28 U.S.C. § 2254(d), federal courts, in habeas proceedings, must accord a presumption of correctness to state court findings of fact. *Lavallee v. Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973). This presumption of correctness is applicable whether the findings of fact are made by a state trial court or a state appellate court. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

The statutory presumption of correctness only applies to state court findings of "basic, primary, or historical fact," *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770, 783 n. 6 (1963); it does not apply to mixed questions of law and fact. In *Sumner v. Mata II,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982), the Court explicitly stated that "the ultimate question as to the constitutionality of the pretrial identification procedures used in this case is a mixed question of law and fact that is not governed by § 2254." *Id.* at 597, 102 S.Ct. at 1307.

■ We believe that the determination of whether the admission of the hearsay statements violated Haggin's Sixth Amendment right to confrontation is a question of law, which involves the application of legal principles to historical facts. *See United States ex rel. Scarpelli v. George,* 687 F.2d 1012, 1015 (7th Cir.1982) *cert. denied* —— U.S. ——, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). *Cf. Marshall v. Lonberger,* —— U.S. ——, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (voluntariness of guilty plea question of federal law not subject to § 2254(d)); *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (finding that lawyers

engaged in multiple representation is mixed question of law and fact open to collateral attack); *Adams v. Jago,* 703 F.2d 978 (6th Cir.1983) (effectiveness of counsel is mixed question of law and fact).

■ Thus, although the state court's rendition of the underlying facts in this case is entitled to a presumption of correctness, the questions before us—whether the admission of the child's statements violated the confrontation clause, and whether their admission was harmless error beyond a reasonable doubt—are determinations of law, subject to collateral review by the federal courts.

### IV

The most important issue presented here is whether appellant's Sixth Amendment right to confrontation was violated by the introduction at trial of the hearsay statements of the child victim.

■ Two factors are important in determining whether the admission of hearsay statements violates the confrontation clause. First, the general rule is that when a hearsay declarant is not present for cross examination, the confrontation clause requires a showing of unavailability, although this is not always necessary.[5] *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Ohio v. Roberts,* 448 U.S. 56, 65 n. 7, 100 S.Ct. 2531, 2538 n. 7, 65 L.Ed.2d 597 (1980). Second, to be admissible, a statement must contain sufficient indicia of reliability to ensure accuracy in the fact-finding process. *Ohio v. Roberts, supra.*

Since the declarant in this case was ruled incompetent to testify, she was clearly unavailable. *See* Fed.R.Evid. 104(a), 804(a). Thus, the focus of our inquiry is whether the hearsay statements contain sufficient indicia of reliability to warrant their admission.

The Supreme Court has declined to make sweeping declarations which would "determine the validity of all ... hearsay 'excep-

---

5. For example, in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the declarant was available.

tions'". *California v. Green,* 399 U.S. 149, 162, 90 S.Ct. 1930, 1937, 26 L.Ed.2d 489 (1970). The confrontation clause allows only hearsay which will not undermine the integrity of the fact finding process.

 Although the confrontation clause is not coterminous with the common law hearsay rule, they both "stem from the same roots" and are "designed to protect similar values." *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. Thus, a finding that a statement falls within a firmly rooted hearsay exception means that it contains sufficient reliability to satisfy the requirements of the confrontation clause.

In *Ohio v. Roberts, supra,* the court concluded:

[C]ertain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' . . . This reflects the truism that 'hearsay rules and the Confrontation Clause are generally designed to protect similar values,' . . . and 'stem from the same roots.' . . . Reliability

6. Reliability is the key to the hearsay rule and the confrontation clause. Analyzing the hearsay rule, Judge Talbot Smith, late of the Eastern District of Michigan, said:

Any, rule, I submit, requiring thirty-two exceptions to explain its operation is not a rule at all but a nonexistent Eudoxian universe. The idea behind the hearsay rule is valid enough, . . . but the idea is not best expressed or applied as a rule or as a series of rules, each with its exceptions, and exceptions to the exceptions . . .

Here we need some perspective. Let us look at the problem as it is presented in the trial court. We have before us at trial an entire complex, a congeries of facts and circumstances arising in the local climate in which we live. Against this background we see witness after witness taking the stand, some bold and aggressive, some shy and subdued, some brassy with fraud, some sick with remorse.

Into this vast panorama of mixed motives and emotions comes an allegation involving hearsay. Shall we admit it? We ponder. In all but the simplest situations we look (at least I do) at why it is offered, by whom, to what point and from what source. . . .

Upon closer analysis what actually happened . . . was this: The judge appraised the situation, the testimony presented and the circumstances under which it was presented. In his own mind, he actually weighed the

can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." [6]

448 U.S. at 66, 100 S.Ct. at 2539.

The question in this case, then, is whether the statements fall within such a well-established hearsay exception that their admission comports with the substance of the confrontation clause.

 The respondent contends that the child's statements are admissible under the res gestae exception to the hearsay rule. We are unwilling to recognize such an exception. As Wigmore points out:

The phrase "res gestae" has long been not only entirely useless, but even positively harmful. It is useless because every rule of evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in terms of that principle.

6 J. Wigmore *Evidence,* § 1767 (J. Chadbourne rev. 1976). And Morgan, discussing the res gestae exception, says:

probability of truth against the probability of deception. In short, he assessed the relative reliability of what was offered, and ascertained whether or not it was testimony reaching a standard of reasonable reliability. In truth, he has employed a standard, not applied a rule.

\* \* \* \* \* \*

But it may well be asked, what practical difference would it make in the trial of cases whether, when confronted with a hearsay problem, we employed a standard of reasonable reliability rather than a series of specific rules of admissibility in varying fact situations?

The differences are many. Most important, we move from fiction to fact. We describe our process in terms of what we actually do, rather than in terms of what we do not do. We dispel a fog of words and thus see in clearer outline the nature of the problems we confront. The confrontation brings life in the courts into correlation with life in the streets. For we act daily, in the most important of our own affairs, upon hearsay. What we really determine in our everyday lives is not whether a report is hearsay, but whether it is reliable.

Smith, *The Hearsay Rule and the Docket Crisis: The Futile Search for Paradise,* 54 A.B.A.J. 231, 235–36 (1968).

The marvelous capacity of a Latin phrase to serve as a substitute for reasoning, and the confusion of thought inevitably accompanying the use of inaccurate terminology, are nowhere better illustrated than in the decisions dealing with the admissibility of evidence as "res gestae." It is probable that this troublesome expression owes its existence and persistence in our law of evidence to an inclination of judges and lawyers to avoid the toilsome exertion of exact analysis and precise thinking.

Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae,* 31 Yale L.J. 229, 229 (1922).[7]

The child's declarations in this case are more properly analyzed as excited utterances. Excited utterances are remarks made shortly after a startling incident, while the declarant is still under the shock of the event. Such statements have long been recognized as exceptions to the general rule prohibiting hearsay because they contain inherent guarantees of truthfulness.

The assumption underlying [the excited utterance] exception is that a person under the sway of excitement precipitated by an external startling event will be bereft of the reflective capacity essential for fabrication and that, consequently, any utterance he makes will be spontaneous and trustworthy.

4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(2)[01] at 803–79 (1981).

The excited utterance exception is based on the belief that the statement is reliable because it is made while the declarant is under the stress of excitement. It is unlikely that the statement is contrived or the product of reflection. Thus, in general, statements falling within the excited utterance exception do not contravene the policies of the confrontation clause. *McLaugh-lin v. Vinzant,* 522 F.2d 448 (1st Cir.1975), *cert. denied,* 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412. *See also United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980) *cert. denied* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

The issue is whether the child's statements fall within the parameters of the excited utterance exception. Although the Tennessee Court of Criminal Appeals has ruled that the child's statements did not fall within the "res gestae" or excited utterance exceptions to the hearsay rule, our inquiry is not ended. The issue before this Court is not whether the statements are admissible under the state evidentiary rules. Rather, the issue is whether, as a matter of federal law, the declarations contain sufficient indicia of reliability and guarantees of trustworthiness to satisfy the interests protected by the confrontation clause. We therefore believe that it is appropriate to utilize the standards developed under the federal rules governing hearsay as guidelines in analyzing the reliability of the statements in question.

Three elements are necessary for the admission of an excited utterance. First, there must be an event startling enough to cause nervous excitement. Second, the statement must be made before there is time to contrive or misrepresent. And, third, the statement must be made while the person is under the stress of the excitement caused by the event.

There are no rigid guidelines for determining whether a statement is spontaneous. Rather, a court must assess various factors on a case by case basis. One of the most relevant factors in determining spontaneity is the length of time between the event and the statement.

---

7. Justice Holmes is reported to have said: "The man that uses the phrase res gestae shows that he has lost temporarily all power of analyzing ideas. For my part, I prefer to give articulate reasons for my decisions." National College of the State Judiciary, *Evidence* 129 (1976).

And Sir Frederick Pollock, writing to Justice Holmes on April 23, 1931, said: "I am report-ing, with some reluctance, a case on the damnable pretended doctrine of *res gestae,* and wishing some high authority would prick that bubble of verbiage; the unmeaning term merely fudges the truth that there is no universal formula for all the kinds of relevancy." 2 *Holmes-Pollock Letters* 284–85 (M. Howe ed. 1941).

Probably the most important of the many factors entering into this determination is the time factor.... Perhaps an accurate rule of thumb might be that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in reflective thought process. Testimony that the declarant still appeared 'nervous' or 'distraught' and that there was a reasonable basis for continuing emotional upset will often suffice.

*McCormick's Handbook of the Law of Evidence* § 297 at 705–706 (2d ed. 1972).

█ It is important to remember, however, that "the ultimate question is whether the statement was the result of reflective thought or whether it was a spontaneous reaction to the exciting event." *Id.* Thus, a court must take into account other factors that could affect spontaneity. For example, the declarant's age or physical or mental condition might indicate that a statement is not the result of reflection even if it was made some time after the exciting event.

Thus, "[p]hysical factors such as shock, unconsciousness or pain, may prolong the period in which the risk of fabrication is reduced to an acceptable minimum." 4 J. Weinstein & M. Berger *Weinstein's· Evidence* ¶ 803(2)[01] at 803–85 (1981).

In *United States v. Iron Shell, supra,* a nine year old assault victim made statements to an officer somewhere between 45 and 75 minutes after the event. The court found that the statements were admissible as excited utterances even though they were made in response to an inquiry after a relatively long lapse of time.

The lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of rule 803(2) (citing authorities). Nor is it controlling that Lucy's statement was made in response to an inquiry. (citing authorities). Rather, these are factors which the trial court must weigh in determining whether the offered testimony is within the 803(2) exception. Other factors to consider include the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event and the subject matter of the statements. *In order to find that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive, rather than the product of reflection and deliberation.* (Citing cases) (Emphasis added). 633 F.2d at 85–86.

In this case, the hearsay statements were made by a four year old child an hour to an hour and a half after she suffered very serious injuries. There is testimony that at the time the statements were made, she was still suffering from the effects of the event. She was bleeding and in critical condition.

Thus, although the statements were not made immediately after the incident which produced the injuries, the child's age and physical condition lead us to conclude that there is sufficient evidence that the child was under the stress of excitement to bring the statements within the ambit of the excited utterance exception.

We find that the circumstances under which the child's statements were made indicate that they were not fabricated. The declarations fit squarely within the parameters of a well-recognized and firmly-rooted hearsay exception. There has been no showing that the statements were untrustworthy. Thus, under *Ohio v. Roberts,* we may infer that the statements carry sufficient indicia of reliability to satisfy the policies protected by the confrontation clause. We therefore conclude that petitioner's Sixth Amendment right to confrontation was not violated by the admission of the child's hearsay statements.

In conclusion, we find the observations of Mr. Justice Cardozo in *Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), (noted in *Dutton v. Evans, supra* ), applicable here:

The law, as we have seen, is sedulous in maintaining for a defendant charged with crime whatever forms of procedure

are of the essence of an opportunity to defend. Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable men will be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.

. . . There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free.

*Id.* at 122, 54 S.Ct. at 338.

The judgment of the district court is affirmed.