GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

PATRICK RILEY, Defendant

Criminal No. 90-129

District Court of the Virgin Islands

Div. of St. Thomas and St. John

October 31, 1990

AZEKAH JENNINGS, ESQ., Assistant United States Attorney, St. Thomas, V.I., *for plaintiff*

THURSTON T. MCKELVIN, ESQ., Federal Public Defender, St. Thomas, V.I., *for defendant*

CARTER, *District Judge*

## MEMORANDUM OPINION

The four-year-old son of the decedent, allegedly murdered by the defendant, appeared in court at a motion to suppress hearing. The objectives of that motion were to exclude testimony concerning out-of-court identification of the defendant by the son for being impermissibly suggestive and unreliable, and to prevent the child from testifying at trial because he was by age an incompetent witness. The Court denied both prongs of that motion.

Denial of the motion to bar the child from testifying on grounds of incompetency, however, was a tentative one. The Court ordered the prosecutor, along with the social workers who were working with the child to insure that he would be able to testify in court, to present for review by the Court and defendant at an October 29, 1990 hearing, the procedures they wished to have employed at trial to insure that the child would respond to questions put by the prosecutor and defendant. The Court's action was necessitated by the child's refusal or inability to respond verbally to questions put by the prosecutor and the Court at the suppression hearing. In order to make the setting less formal or intimidating, I had the child seated in the well of the court in a chair beside his mother, and I came off the bench and sat beside the child. In spite of repeated attempts by the prosecutor and the mother to elicit responses, the child refused to talk. Finally, he did respond to the Court's questions by nodding his head to indicate an affirmative answer and shaking his head to indicate a negative one.

At the hearing on October 29, 1990, to review the procedures to be used, the Court was advised by the prosecutor and the social workers that they had been working with the child all week in a simulated courtroom setting and were confident he could testify. I had serious reservations that these procedures would succeed in getting the child to respond to questions from both the prosecutor and defense counsel at trial. I asked the prosecutor whether the child's testimony was critical, and he indicated that he viewed it as most

399

critical. While I seriously question the accuracy of that assessment, it is not the Court's function to interfere with government's trial strategy.

Somewhat later that same day, the prosecutor had second thoughts about whether the child would testify at trial, because the child had begun to become unresponsive in the simulated setting. Relying on Maryland v. Craig, — U.S. —, 110 S. Ct. 3157 (1990), the prosecutor proposed having the child testify outside the courtroom by use of a closed-circuit television procedure. The prosecutor and defense counsel would question the child outside the courtroom, and that process would be viewed inside the courtroom by the Court and jury on a television screen. Presumably, objections and rulings thereon would be communicated between Court and counsel.

The government placed reliance on the Court's broad powers to control the conduct of trials, citing Geders v. United States, 425 U.S. 80, 86 (1976), a generalized need for special procedures for obtaining testimony from young children, the fact that 27 states authorize live closed-circuit television procedures to secure the testimony of young children in certain situations, and approval of such procedures in some states even in the absence of enabling legislation. Government's Memorandum in Support of the Use of One-Way Closed Circuit Television (passim).

■ Maryland v. Craig does not legitimate the use of any closed-circuit television procedure here. The state of Maryland authorized such procedures in a child witness protection statute establishing a state interest, which the Supreme Court found sufficiently important under the circumstances to outweigh the defendant's right to face-to-face confrontation of his accusers pursuant to the Sixth Amendment guarantee. There is no such child witness protection statute applicable here, pursuant either to Congressional legislation or to the Virgin Islands Code.

■ Moreover, Maryland v. Craig involved a sexually abused child who was being called upon to testify against the person accused of the abuse. While I do not believe Craig should be read so narrowly as to apply only in child sexual abuse cases, Craig permits use of closed-circuit television or like procedures only where it is necessary to protect a child from trauma caused by testifying in the physical presence of the defendant. The need to protect a child from courtroom trauma generally is not sufficient, and the child's distress must be found to be more than "'mere nervousness or excitement or some

reluctance to testify'" .... Id. at 3169, quoting from Wildermuth v. State, 310 Md. 496, 518, 530 A.2d 275, 286 (1987).

■ Even if I am in error and a legislative declaration of governmental interest is not required, none of the other yardsticks set out in Craig are present here. This child was traumatized by the courtroom setting, or became so nervous among strangers that he could not speak. While the prosecutor has argued orally that the child's apparent trauma was defendant generated, this came as an afterthought. The defendant was not present at the suppression hearing; nor was he on hand in the simulated sessions during which the child became unresponsive. The motion to permit the use of the closed-circuit television procedure is therefore denied.

The prosecutor, in the Court's view, has been so intent on getting the live testimony of the child before the jury that he has failed to fully canvass what the repercussions will be if the child refuses to respond at trial. If this occurred, the Court might feel compelled on its own motion to declare a mistrial. Such a course would raise serious double jeopardy issues, particularly since the prosecutor and Court would have had ample notice that such a consequence might result. This could amount to judicial misconduct and/or prosecutorial misconduct intended to provoke a defendant's motion for mistrial, which would bar retrial of defendant on double jeopardy grounds. See Richardson v. United States, 468 U.S. 317, 325 (1984); Oregon v. Kennedy, 456 U.S. 667, 672 (1982). In any event, the risk of putting the child on the witness stand, and of his either refusing to testify at all or answering the questions put by the prosecutor but refusing to respond to questions put by defendant, poses too great a threat to the integrity of this trial for the Court to permit it in any form.

■■ While the confrontation clause may not guarantee an absolute right to face-to-face interrogation of a child witness, the child's live testimony must be subject to rigorous testing in an adverse setting before the trier of fact to ensure its reliability. That is a basic Sixth Amendment requisite. Since I cannot be certain that the child will respond to cross-examination or indeed will be able or willing to testify at all, I am barring the appearance of the child as a witness in this case in open court on the ground that he is incompetent to testify. I am confident that the child is capable of receiving just impressions of fact and of relating them truly, see Idaho v. Wright, — U.S. —, 110 S. Ct. 3139, 3151 (1990), but I am equally certain that the child may be unable to communicate to the jury at trial, either be-

401

cause of generalized courtroom trauma, nervousness or excitement. Accordingly, the child will not be permitted to testify in open court at the trial of this case.

## ORDER

THIS MATTER having come before the Court on motion by both parties, and the Court having filed a memorandum opinion of this date, it is hereby

ORDERED:

THAT the motion to allow the use of closed-circuit television is DENIED.

THAT the motion to declare the child incompetent to testify in open court is GRANTED.

DATED this 31st day of October, 1990.