The Court finds that genuine issues of material fact are indeed present as to whether the Ground Services employees were negligent in leaving the keys in the

ignition. Accordingly, defendant's motion for summary judgment will be denied.

An appropriate order will be entered.

**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff,**

v.

**Patrick RILEY, Defendant.**

**Cr. No. 90–129.**

District Court, Virgin Islands, D. St. Thomas and St. John.

Jan. 8, 1991.

---

**3.** Defendant's supplemental memorandum was filed in response to plaintiff's claim that defendant's initial motion for summary judgment was unsupported by affidavits or sworn evidence. Because Dawson's affidavit is now a part of the record, the Court does not address this particular objection by plaintiff.

Azekah E. Jennings, Asst. U.S. Atty., St. Thomas, Virgin Islands, for the Government.

Thurston T. McKelvin, Acting Federal Public Defender, St. Thomas, Virgin Islands, for defendant.

## MEMORANDUM OPINION

ROBERT L. CARTER, District Judge, Sitting by Designation.

The court must once again consider whether and in what form the testimony of Samuel Jamiel Joseph, a four-year-old child, is to be admitted in evidence against the defendant, who is accused of murdering the child's father. As set out in the court's opinion of October 31, 1990, with which familiarity is assumed, the court granted the defendant's motion to hold the child incompetent to testify in open court, and denied the government's motion to allow the child to testify by closed-circuit television. *Government of V.I. v. Riley*, 750 F.Supp. 727, 729 (D.V.I.1990) (Carter, J.). Although the court found that the child understood the difference between truth and falsehood and understood his obligation to tell the truth, it also found that his anxiety created by the courtroom atmosphere made him unable to respond to questioning. *Id.* at 729.

In a ruling from the bench, the government was given leave to take and videotape the child's deposition. The question of whether the deposition testimony would be admitted in evidence was left until after the court had an opportunity to review the videotape and transcript of the deposition.

On November 9, 1990, the child's deposition was taken pursuant to Rule 15, F.R. Cr.P.[1] Although the defendant had expressly waived his right to be present, he was represented by counsel at the deposition. The child responded to the questions put to him by the prosecutor during the direct examination. He picked out a photograph of the defendant from an array of five photographs, and identified him as the person who shot the decedent. When the prosecutor asked the child about a showup at the police station in which he had seen

---

1. The Federal Rules of Criminal Procedure and Evidence are applicable in criminal proceedings in this court. Rule 54(a), F.R.Cr.P.; Rule 1101(a), F.R.Evid.; *see also Government of V.I.* *v. Dyches*, 11 V.I. 459, 507 F.2d 106, 108 (3d Cir.), *cert. denied*, 421 U.S. 917, 95 S.Ct. 1579, 43 L.Ed.2d 783 (1975).

the defendant shortly after the shooting, he confirmed that the person whom he had seen at the police station was the person who had shot his father.

Defense counsel proceeded to cross-examine the child. At first the child responded to the questions, but as the cross-examination proceeded, he appeared to become confused as to some of the details of the occurrences, tired, distracted and impatient, but he said that he did not want to take a break from the deposition. Eventually, he became fidgety and totally unresponsive. After a short break, the child remained unresponsive.

Defense counsel objected on the record that he had lost the child's attention, that there was "quite a bit more that [he] would like to ask of [the child] concerning this occurrence and ... these proceedings," and that he was "at an extreme disadvantage in terms of asking [the child] the questions." Deposition Transcript at 32–33. Defense counsel argued that the child was incompetent to testify at the deposition and that defendant had been denied any meaningful right to confrontation as a result of the child's behavior. *Id.* at 39–40; Letter from Defense Counsel to the Court, Jan. 7, 1991.

The government now moves for reconsideration of the court's decision to hold the child incompetent to testify. If the child refuses to testify when put on the witness stand, the government wishes to use the videotape and transcript of the deposition as evidence at trial.

### I.

There is nothing in the videotape or transcript of the child's deposition to cause the court to modify its earlier decision that the child is incompetent to testify in a courtroom setting. As discussed in the court's earlier opinion, *Riley, supra,* 750 F.Supp. at 728, the child would not respond to questioning in the courtroom and in the presence of the court at the hearing on the defendant's motion to suppress, despite the efforts of the court to make the setting less formal or intimidating to the child. The child's performance in the prosecution's own simulated courtroom setting was also less than satisfactory. *Id.* at 728. At the actual trial, the setting will be even more intimidating to the child, inasmuch as the defendant will be present, twelve or more strangers will be sitting in the jury box, spectators will be present in the courtroom, and the court may be unable to use all the strategies that it employed to make the child more comfortable at the hearing on the motion to suppress. The deposition, by contrast, was conducted in a relatively private and informal setting, in which the child was seated at a table in what appears to be an office. Even in that relatively comfortable setting, the child eventually became distracted and unresponsive.

For these reasons, the court remains convinced that "the child may be unable to communicate to the jury at trial ... because of generalized courtroom trauma, nervousness or excitement." *Id.* at 729. If the child is put on the witness stand at trial and refuses to respond, or responds only to the prosecutor but not to defense counsel, the result could be highly prejudicial to the defendant and could provoke a mistrial. *See id.* at 729. The court, therefore, reaffirms its finding that "the risk of putting the child on the witness stand ... poses too great a threat to the integrity of this trial for the Court to permit it in any form." *Id.* The child does not have the requisite capacity to "narrate his impressions of an occurrence" in the courtroom setting. *United States v. Schoefield,* 465 F.2d 560, 562 (D.C.Cir.) (per curiam), *cert. denied,* 409 U.S. 881, 93 S.Ct. 210, 34 L.Ed.2d 136 (1972). Accordingly, the child's appearance as a witness in this case in open court is barred on the grounds that he is incompetent to testify.

### II.

The court must still decide, however, whether the videotape testimony should be admitted. The use of depositions at trial is more restricted in criminal cases than in civil cases. *Compare* Rule 15(e), F.R.Cr.P., *with* Rule 32(a), F.R.Civ.P. In a criminal case, a deposition may be used for impeachment purposes or if the witness gives testimony at the trial inconsistent

with the deposition. Rule 15(e), F.R.Cr.P. It may also be used substantively if the witness is "unavailable." *Id.*; Rule 804(b)(1), F.R.Evid. The applicable definition of "unavailability" states in part:

"Unavailability of a witness" *includes* situations in which the declarant—

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

(3) testifies to a lack of memory of the subject matter of the declarant's statement; or

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means.

....

Rule 804(a), F.R.Evid. (emphasis added).

At least one court has held that a child who is incompetent to testify because of his age is "unavailable," although such a witness is not clearly included in the language of Rule 804(a). *See Haggins v. Warden, Ft. Pillow State Farm,* 715 F.2d 1050, 1055 (6th Cir.1983) (addressing Sixth Amendment confrontation clause, but citing Rule 804(a) in support), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984); *see also Idaho v. Wright,* — U.S. —, 110 S.Ct. 3139, 3147, 111 L.Ed.2d 638 (1990) (assuming without deciding that a child unable to communicate to the jury was unavailable for confrontation clause purposes).

The fear, nervousness or excitement that renders the child unable to testify in court, though it may be quite normal for someone of his age, may fall within the scope of the term "mental ... infirmity" as that term is used in Rule 804(a)(4), F.R.Evid. Although the term "infirmity" often connotes a defect or illness, the basic meaning of the term is "weakness" or "feebleness." *Black's Law Dictionary* 700 (5th ed.1979). The child's incompetence to testify in open court is due to the weakness of the emotional state of a child of his age as compared to an ordinary adult, and thus can be said to be the result of a "mental infirmity."

In any event, the admission of the deposition does not depend on the categorization of the child's incompetence as a "mental infirmity." Evidently, the purpose of the deposition exception to the hearsay rule, together with its unavailability requirement, is to permit deposition testimony when and only when live testimony cannot be procured through reasonable means. The literal language of Rule 804(a) suggests that the definition of unavailability is illustrative rather than exhaustive, and the purpose of the deposition exception to the hearsay rule would be defeated by adopting a reading that would exclude reliable deposition testimony even though the witness's live testimony could not be obtained at trial. The inability of a child to communicate with a jury, no matter how it is described, is similar in its essential nature to the types of unavailability specifically enumerated in Rule 804(a). It makes no difference whether the absence of the witness's live testimony is due, on the one hand, to a young child's fear of the courtroom setting, or on the other hand, to a refusal to testify, a mental illness or disability, or a lack of memory. In any of those circumstances, the witness is equally unavailable to testify. Accordingly, the Federal Rules of Evidence and Criminal Procedure do not bar the introduction of the deposition in evidence.

▇▇▇ Concerning the Sixth Amendment confrontation clause,[2] the defendant expressly and knowingly waived his right to be personally present at the child's deposi-

---

**2.** The confrontation clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. Amend. 6. The Sixth Amendment is applicable to the Virgin Islands by virtue of 48 U.S.C. § 1561.

tion, and so the use of the deposition at trial cannot infringe the right to a face-to-face confrontation between the defendant and the witness. *See Maryland v. Craig,* —— U.S. ——, 110 S.Ct. 3157, 3162, 111 L.Ed.2d 666 (1990). This does not completely dispose of the confrontation clause issue, however, since defendant's counsel must also have an opportunity for effective cross-examination. *See, e.g., id.* at ——, 110 S.Ct. at 3163; *Delaware v. Fensterer,* 474 U.S. 15, 18, 106 S.Ct. 292, 293, 88 L.Ed.2d 15 (1985) (per curiam); *Riley, supra,* 750 F.Supp. at 729.

■ Defense counsel had a full opportunity to cross-examine the child at the deposition, with the understanding that the deposition was being taken for possible use at trial. *Cf. Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968). It is true that during cross-examination the child became confused and distracted, and eventually stopped responding. The confrontation clause, however, "includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." *Fensterer, supra,* 474 U.S. at 21–22, 106 S.Ct. at 295–296. The cross-examination of the child at the deposition raises the issue of the child's credibility in an effective manner. The jury will be able to observe the child's demeanor on the videotape and will have to evaluate the child's credibility in the light of what it sees. Indeed, the child's refusal to answer some of the questions put to him during cross-examination is itself a factor that the jury must consider in weighing the child's testimony. *Cf. id.* at 22, 106 S.Ct. at 295.

Moreover, the court has "wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). When the witness is a young child, the witness's sensitivities and limited attention span make the above concerns especially important. *See Quimby v. McMackin,* 890 F.2d 416 (6th Cir.1989), (unpublished order, text in Westlaw), *cert. denied,* —— U.S. ——, 110 S.Ct. 1819, 108 L.Ed.2d 949 (1990). Extended questioning of the sort appropriate to cross-examination of an adult witness may not be useful when directed at a four-year-old child. Such questioning is more likely to confuse the child, lead him to misunderstand the questions being asked or render him unresponsive—all of which happened in this case. While the court does not suggest that defense counsel's cross-examination was designed to harass or confuse the witness, that is what it appears to have accomplished.

■ By the time the child stopped responding, there was little or nothing material to the defense that defense counsel could have brought out by further questioning. The questions the child answered gave the defendant's counsel an ample opportunity to test the child's recollection of the identity of the person who shot his father—the only substantial fact in issue in his testimony—and to test the honesty of the child and the general accuracy of his recollection. Just as the confrontation clause permits the introduction of hearsay "if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility," *Wright, supra,* —— U.S. at ——, 110 S.Ct. at 3149, it does not give the defendant the right to continue cross-examination interminably after he has had a "full and fair opportunity to probe and expose [the] infirmities" of the witness's testimony. *Fensterer, supra,* 474 U.S. at 22, 106 S.Ct. at 295. In view of all the circumstances, it is clear that the child's deposition testimony was "subject to rigorous testing in the context of an adversary proceeding" so as to satisfy the confrontation clause. *Craig, supra,* —— U.S. at ——, 110 S.Ct. at 3163.

### III.

In sum, the government's motion to reconsider the order of October 31, 1990, and to permit the child to testify in open court,

is denied. The government will be allowed to introduce the videotape of the child's deposition in evidence at trial, and will also be allowed to introduce the transcript, provided that the jury is permitted to view the videotape.

An appropriate order will be entered.