UNITED STATES of America,
Plaintiff–Appellee,

v.

Hassan Ibrahim TABAJA,
Defendant–Appellant.

No. 02–2359.

United States Court of Appeals,
Sixth Circuit.

Feb. 23, 2004.

■

Kenneth R. Chadwell, Jr., U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

David S. Steingold, David S. Steingold Associates, Detroit, MI, for Defendant–Appellant.

Before KENNEDY, DAUGHTREY, and COLE, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant Hassan Ibrahim Tabaja ("defendant") was convicted of one count of aiding and abetting an international parental kidnapping in violation of 18 U.S.C. § 1204. The district court sentenced defendant to twenty-seven months of imprisonment. Defendant challenges his conviction and sentence on two distinct grounds. For the reasons explained below, we AFFIRM the judgment of conviction and defendant's sentence.

## I. Background

Defendant is the brother of Ali Tabaja ("Ali"), who was formerly married to Zohra Abbiss ("Zohra"). Sam Ali Tabaja ("Sam") was born of this union. Ali and Zohra ultimately divorced. Pursuant to the divorce decree, Zohra received physical custody of Sam while Ali received reasonable visitation with him. Zohra and Ali agreed on an arrangement whereby Ali would take Sam on the weekends. For some time following the divorce, defendant and Ali shared a residence in Detroit, Michigan. Also during this time, Ali and Zohra were having frequent and on-going disputes, of which defendant was well aware.

On Friday, January 10, 1997, Ibrahim Tabaja, Ali and defendant's father, wire-transferred $4,979 from Beirut, Lebanon, to a joint bank account in Ali's and defendant's names. That same day, Ali withdrew $900 from the account, and picked up Sam for his weekend visitation. On Saturday, January 11, 1997, defendant drove Ali and Sam to the Detroit Metropolitan Airport for a flight to Beirut, Lebanon. Later that evening, Zohra twice called Ali and defendant's residence to speak with Sam. On each occasion, defendant lied about Sam's whereabouts. Zohra first learned about Sam's abduction when Ali called Zohra from Lebanon at approximately 4:00 pm on Sunday, January 12, 1997. After learning about Sam's kidnapping, Norma Bally ("Norma"), Zohra's sister, called defendant. Defendant told Norma: "[T]he baby is in Lebanon with Ali and you guys will never see him again." At approximately 9:00 pm that night, Zohra, Norma, and Steven Sabbota ("Sabbota"), their then-prospective in-law, went to Ali and defendant's residence. Before slamming the door in their faces, defendant told them that Ali would not be returning with Sam from Lebanon and that Zohra got what she deserved. Some time later that evening. Zohra reported the kidnapping to the Ferndale Police Department.

## II. Sixth Amendment Claim

■ Defendant appeals his conviction and sentence on the ground that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment. The theory of the defense was that, at the time that defendant aided Ali's departure with Sam to Lebanon, defendant believed that it was to be a "legitimate father-son vacation of short duration." In particular, de-

fendant, the sole defense witness, testified that Ali had told defendant that he had Zohra's permission to take Sam to Lebanon to attend their brother's engagement party, and that he would return with Sam to the United States shortly thereafter. Defendant contends that his trial counsel provided unconstitutionally-ineffective assistance when he failed to interview and to present witnesses who could have corroborated that this was Ali's expressed intention in departing for Lebanon. Defendant claims that he informed trial counsel of these witnesses' identities and whereabouts. However, defendant concedes that the record demonstrates neither the identities nor the proposed testimony of these witnesses. Alternatively, defendant contends that trial counsel rendered unconstitutionally-ineffective assistance when he failed to introduce into evidence the motor vehicle registration for the automobile that Ali purchased and registered in his name immediately before his trip to Lebanon.[1] Defendant maintains that this evidence would have shown that Ali had intended to return to the United States with Sam rather than remain in Lebanon indefinitely, thereby corroborating defendant's defense that he had believed this to be true at the time that he aided Ali's departure with Sam to Lebanon. Defendant underscores that, had he believed that Ali would not be returning to the United States, he would have had the vehicle's registration transferred into his name.

█ As the Supreme Court has recognized, it is preferable for a litigant to bring a Sixth Amendment claim of ineffective assistance of counsel on collateral review in a motion under 28 U.S.C. § 2255 than to bring such a claim on direct review. *Massaro v. United States*, 538 U.S. 500, 123

S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003); *accord United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir.1997). The Supreme Court reasoned:

> When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 ... (1984), a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial. The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis.

*Id.* Consequently, appellate courts generally will not consider claims of ineffective assistance of counsel on direct review. *See Aguwa*, 123 F.3d at 423. Because the record here does not afford an appropriate basis upon which to deviate from this customary practice, we decline to consider defendant's Sixth Amendment claim on direct review. We also decline defendant's request that we remand the case to the district court for an evidentiary hearing into the factual basis underlying defendant's Sixth Amendment claim so as to enable us to decide that claim's merits. Defendant's remedial avenue for his alleged Sixth Amendment violation is a § 2255 post-conviction proceeding.

### III. Evidentiary Challenges

█ During the trial, the government called Kenneth Hunt ("Hunt"), a former

---

1. Because this motor vehicle registration is not in the lower court record, defendant moves this Court to take judicial notice of the existence of this public record.

Ferndale police officer who, on January 12, 1997, had responded to Zhora's call to the Ferndale Police Department concerning the kidnapping. After refreshing his recollection with his police report of the encounter, Hunt testified that, when he arrived at the scene. Zhora, Norma, and their mother, Souad Abbiss ("Souad"), were present. Hunt further testified that all three of the women were visibly upset and distraught. From his police report, Hunt read into the record the following statement from Norma:

> Around six p.m. that night, Norma called . . . [defendant], asked him where Ali and Sam were because Ali had not brought Sam home at the three o'clock meeting as he was supposed to. He told her that Ali had taken Sam back to Lebanon and that they were not coming back and then he hung up on her.

Although Hunt's police report also contained statements from Zohra and Souad. Hunt was not questioned about these other statements nor was the balance of his police report admitted into evidence. Thus, the record belies defendant's contention on appeal that Hunt's entire police report, including Zohra and Souad's statements, was admitted into evidence. We, therefore, consider only defendant's challenges to the admission of Norma's statement from the police report.

Defendant challenges the admission of this evidence under both Federal Rules of Evidence 803(2) and 403. Because defendant raises these specific challenges for the first time on appeal, we review only for plain error.[2] *See United States v. Vincent,* 20 F.3d 229, 234 (6th Cir.1994). Plain error requires: 1) an error; 2) that is plain; 3) that affects substantial rights; and 4) that seriously affects "the fairness, integrity, or public reputation of the proceedings." *Id.*

We review a district court's evidentiary rulings for an abuse of discretion. *General Elec. Co. v. Joiner,* 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Our case law on whether we review rulings on hearsay for an abuse of discretion or *de novo* is inconsistent. *Compare United States v. Wright,* 343 F.3d 849, 865–66 (6th Cir.2003) (reviewing a hearsay ruling for an abuse of discretion), *and United States v. Hilliard,* 11 F.3d 618, 619 (6th Cir.1993) (reviewing a ruling under Rule 804(b)(3) for an abuse of discretion), *with Fisher v. City of Memphis,* 234 F.3d 312, 316 (6th Cir.2000) (holding that, although we generally review evidentiary rulings for an abuse of discretion, we review *de novo* evidentiary rulings on hearsay and citing *United States v. Johnson,* 71 F.3d 539, 543 (6th Cir.1995)), *and Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 716 (6th Cir. 1999) (relying upon *General Elec. Co.,* 522 U.S. at 141, in reviewing a hearsay evidentiary ruling for an abuse of discretion despite questioning its underlying rationale and despite "well-settled precedent" holding that we review such rulings *de novo* ).

---

**2.** Failing to address this forfeiture, defendant's brief assumes that harmless-error review applies. At trial, after Hunt had testified that the three women were visibly upset and distraught when he arrived at the scene, the government argued that it had "laid the foundation for statements being given to . . . [Hunt] on that day being excited utterances." Defendant objected to this assertion on the ground that it was necessary to know the speakers of any statements to which Hunt would testify. After determining that the police report does, in fact, identify the speakers of any statements, the district court permitted the government to proceed in its questioning of Hunt. Hunt then read Norma's statement from his police report into the record. Defendant never objected to the admission of this particular statement on any grounds, including under Federal Rules of Evidence 803(2) or 403.

However, we need not join this dispute.[3] Because an abuse of discretion occurs when a lower court "improperly applies the law or uses an erroneous legal standard." *United States v. Heavrin,* 330 F.3d 723, 727 (6th Cir.2003), our analysis of whether a particular statement is hearsay is the same under either a *de novo* or abuse-of-discretion standard. Even assuming the *de novo* standard of review were to apply, the district court did not err in determining that Norma's statement to Hunt fell within Federal Rule of Evidence 803(2) as an exception to Rule 802's general ban on hearsay.

Known as the "excited utterance" exception. Federal Rule of Evidence 803(2) exempts from exclusion under the hearsay rule "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." This exception rests upon the assumption "that a person under the sway of excitement precipitated by an external startling event will be bereft of the reflective capacity essential for fabrication and that, consequently, any utterance he makes will be spontaneous and trustworthy." *Haggins v. Warden, Ft. Pillow State Farm,* 715 F.2d 1050, 1057 (6th Cir.1983) (quoting 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(2)[01] at 803–79 (1981)) (internal quotation marks omitted). For a hearsay statement to be admissible as an excited utterance under Rule 803(2), the following three conditions must exist: 1) the statement must relate to an event or condition startling enough to cause nervous excitement; 2) the individual must have made the statement before there was time to contrive or to misrepresent that statement; and 3) the individual must have made the statement while still experiencing the stress or shock of the excitement that the event or condition caused. *See* Fed.R.Evid. 803(2); *Haggins,* 715 F.2d at 1057.

Defendant does not dispute that Norma's statement to Hunt related to an event startling enough to cause Norma to suffer much excitement and distress-her learning that Ali had kidnapped her nephew. Defendant also does not dispute that Norma made the statement to Hunt while she was visibly upset and distraught and, thus, still seemingly undergoing the stress of the startling event. Rather, defendant argues that, because the record does not clearly establish the length of time between when Norma first learned of the kidnapping and when she made the contested statement to Hunt, the record fails to demonstrate that Norma made that statement before there was time for her to have contrived or misrepresented it. At the time that the district court admitted into evidence Norma's statement from Hunt's police report, the record revealed only that: 1) Souad had last seen Sam on the afternoon of Friday, January 10, 1997, when Ali had picked him up for his weekend visitation; 2) On Sunday, January 12, 1997, Norma had called defendant to inquire into Sam's whereabouts at 6:00 pm; 3) Also on Sunday, Zohra, Norma, and Sabbota had gone to defendant's residence to ask about Sam's whereabouts at approximately 9:00 pm; and 4) On that same evening, Norma had made the statement to Hunt sometime between 9:00 pm and the end of Hunt's shift. The record, as developed at that point, did not remove the possibility that the kidnapping actually occurred on Friday afternoon soon after Ali picked up Sam for weekend visitation and that Nor-

---

**3.** We note that defendant, in his brief, contends that the proper standard of review is for an abuse of discretion.

ma learned of the kidnapping shortly thereafter. Such a factual scenario would have given Norma sufficient time from the startling event until when she gave her statement to Hunt to have fabricated or manipulated that statement. *See United States v. Winters,* 33 F.3d 720, 723 (6th Cir.1994) (affirming the district court's finding that a statement made two days after the startling event did not qualify as an excited utterance because it was a result of conscious reflection).

However, the entire record demonstrates that, on January 12, 1997, Norma learned from Zohra that Ali had kidnapped Sam sometime between 4:00 pm—the time that Zohra learned about it—and 6:00 pm—the time that Norma called defendant to confirm Sam's whereabouts. The record also reveals that Norma, in a highly distraught and frantic state, made that statement to Hunt sometime between 9:00 pm—the time that Zohra, Norma, and Sabbota arrived at defendant's house to question him about Sam's whereabouts—on that same day and the time at which Hunt's shift ended. While the record does not clearly establish the exact time interval between the startling event and the contested statement, it does demonstrate that this interval, at its outermost, could not have exceeded eleven hours. As this Court has affirmed, even "where the time interval between the event and the statement is long enough to permit reflective thought," evidence that the speaker "still appeared nervous or distraught and that there was a reasonable basis for continuing emotional upset will often suffice" to demonstrate that the statement was not, in fact, a product of reflection. *Haggins,* 715 F.2d at 1058 (quoting *McCormick's Handbook of the Law of Evidence* § 297 at 705–06 (2d ed.1972)) (internal quotation marks omitted). Even assuming that the time interval between the startling event and when Norma made the contested statement to Hunt was eleven hours and long

enough for Norma to have contrived that statement, it was, nevertheless, reasonable to conclude that Norma's excited emotional state at the time that she made that statement persisted from the time that she had learned about Sam's kidnapping due to the devastating nature of that information.

■ Alternatively, even if the district court had erred in admitting Norma's statement to Hunt as an excited utterance under Rule 803(2), any such error did not affect defendant's substantial rights. Norma herself later testified that defendant had, indeed, told her that Ali had taken Sam to Lebanon and that they would never see Sam again. Thus, the admission of Norma's statement to Hunt merely corroborated admissible evidence. The district court's admission of Norma's statement to Hunt under Rule 803(2) survives plain error review.

■ For the first time on appeal, defendant also contends that Norma's statement to Hunt was inadmissible under Federal Rule of Evidence 403. We review a district court's evidentiary ruling under Rule 403 for an abuse of discretion. *See United States v. Bonds,* 12 F.3d 540, 554 (6th Cir.1993). Federal Rule of Evidence 403 provides that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Under this standard, we take a "maximal view" of the evidence's probative effect and a "minimal view of its unfairly prejudicial effect." *United States v. Sassanelli,* 118 F.3d 495, 498 (6th Cir. 1997). Defendant claims that the admission of Norma's statement to Hunt greatly prejudiced defendant because the government was improperly trying to bolster Norma's "speculative testimony." First, we fail to see anything "speculative" in Norma's concrete testimony that, at 6:00 pm on Sunday, January 12, 1997, defendant had told her that Ali had taken Sam to Lebanon permanently. If defendant

means to suggest that Norma was lying about what defendant had told her, it was for the jury to resolve that credibility dispute. Second, defendant is correct that the admission of Norma's statement to Hunt prejudiced him in that it corroborated Norma's independent testimony relaying the incriminating substance of that statement. However, prejudice solely arising from the inculpatory nature of evidence is not *unfair*. Defendant makes no argument—let alone a persuasive one—as to how the admission of Norma's statement to Hunt unfairly prejudiced him. Consequently, defendant's claim that the district court abused its discretion in admitting Norma's statement to Hunt under Rule 403 must fail. Finding no error, our review ends in the government's favor.

For the preceding reasons, we AFFIRM the judgment of conviction and defendant's sentence.