816 F.2d 683
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Allen REICH, Defendant-Appellant.
 No. 85-1993.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1987.
 
 Before KEITH and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant appeals the judgment entered on his jury conviction for impersonating a United States employee in violation of 18 U.S.C. Sec. 912 (1982). Because we find no error in the trial court proceedings and because there was sufficient evidence to support defendant's conviction, we affirm the judgment below.
 
 
 2
 On September 14, 1983, a 72 year old woman, Mrs. Paonessa, was approached by a man as she stood on the porch of her home. The man drove an old police car and claimed to be from the Social Security Administration. He told her that she would lose her benefits unless she submitted to a physical examination. When Mrs. Paonessa's neighbor came over and questioned the man about his claims, the man departed after cautioning Mrs. Paonessa to fill out the forms she would be receiving.
 
 
 3
 The next day, Mrs. Paonessa's son-in-law observed a man and a car fitting the description of the supposed Social Security representative. The neighbor confirmed that it was the same car and the same man. The information was given to the authorities, who discovered that Robert Reich, the defendant, had been driving the old police car on the day in question.
 
 
 4
 Special Agent William Sievers of the Federal Bureau of Investigation was assigned to the case and scheduled an appointment with Reich. When Agent Sievers first met defendant, he advised him that he was investigating an impersonation incident. In this first interview, defendant claimed to recall the huge fire that occurred near Mrs. Paonessa's home on September 14th. He claimed that he had been working that day dressed in a blue mechanic's uniform. While admitting he had driven through the general vicinity of the fire, he denied stopping at an elderly woman's house and impersonating a federal employee. At the conclusion of the interview, Special Agent Sievers advised defendant that it was a felony to impersonate a Social Security employee and that if he was the person who had done it, he should cease and desist. Defendant claims that the officer also said that if defendant ceased and desisted, all would be forgotten. However, defendant admitted that he had doubted that all would be forgotten.
 
 
 5
 Subsequent to this interview, Agent Sievers learned that defendant had been found not guilty by reason of insanity of the rape and robbery of an 88 year old woman in 1977. On October 31, 1983, defendant was contacted at his workplace by Special Agents Sievers and Raymond Foltz for another interview. He was advised that he did not have to consent to the interview. Defendant agreed to the interview and placed a private phone call to his brother, prior to leaving work. He then followed the agents in his own car to a junior high school where a local police department had made some offices available to the F.B.I.
 
 
 6
 At this second interview, Agent Sievers told defendant that Sievers believed defendant had not been completely truthful at their previous meeting. Defendant was read his rights from an F.B.I. standard form and he signed the waiver of rights portion, indicating he understood them. Defendant then admitted to stopping at an elderly woman's house on September 14th and he described Mrs. Paonessa and her neighbor, Mrs. Sproviero. Defendant claimed he did not recall talking to the women about Social Security or asking the lady to submit to a physical examination. He denied carrying a little bag or anything like that, but admitted that he was wearing a coat and tie. Additionally, he now claimed that he had not been working that day due to an illness. At the conclusion of the interview defendant was served with a grand jury subpoena to appear in a line-up. The agents also asked if the defendant would allow the agents to take a photograph of him, but he refused.
 
 
 7
 A line-up was held on November 8, 1983, at the Warren, Michigan Police Department. After its conclusion, defendant was asked to accompany the agents to an office in the building. He agreed. Defendant was advised of his rights and indicated his willingness to talk by signing a waiver form. At that time, defendant was advised that someone had picked him out of the line-up, but that he was not under arrest. He was asked if he would make a written statement concerning the incident, which would be given to the United States Attorney's office for whatever decision they would make regarding prosecution in the matter. Prior to writing out his statement, defendant asked what was going to happen to him. Agent Sievers advised him that there were a number of possibilities: he could be charged with a felony; he could proceed to trial; he could work out a plea agreement with the government; he could be placed on Pretrial Diversion; or he might not be prosecuted at all. Agent Sievers told defendant that he (Sievers) had absolutely no control over what would happen.
 
 
 8
 In his written statement, defendant admitted to stopping at a woman's house and asking her about forms she was supposed to fill out for Social Security. He also admitted that, after the neighbor came over, he told her (Mrs. Sproviero) that the lady (Mrs. Paonessa) was supposed to fill out forms for Social Security and that they would mail them to her.
 
 
 9
 Defendant was indicted for impersonation of a federal employee and was found guilty by a jury following a two-day trial. He was sentenced to three years in an institution with mental health therapy.
 
 
 10
 Defendant first argues on appeal that there was not sufficient evidence to support his conviction and that the district court erred in denying his motion for acquittal. A challenge to the sufficiency of the evidence "will be determined by review of the evidence in the light most favorable to the government." United States v. Elkins, 732 F.2d 1280, 1287 (6th Cir.1984). The conviction will be affirmed if there is "sufficient competent evidence on the record to justify a rational juror's conclusion that every element of the offense has been established beyond a reasonable doubt." Id. Defendant correctly points out that a person is guilty under 18 U.S.C. Sec. 912 only if he both pretends to be a United States employee and commits an overt act beyond such representation. See Lamar v. United States, 241 U.S. 103 (1915). In the case at hand, both Mrs. Paonessa and her neighbor testified that defendant said he was from the Social Security Administration. Mrs. Paonessa also testified that he attempted to obtain her consent to a physical examination. Accordingly, there was sufficient evidence to support defendant's conviction under the statute and the court did not err in denying the motion for acquittal.
 
 
 11
 Defendant's next argument is that the hearsay rule should have prevented the neighbor woman from testifying to Mrs. Paonessa's statements on the porch. The neighbor at trial testified:
 
 
 12
 Mrs. Paonessa said, "Margaret, Margaret," she raises her hands, "Margaret, Margaret," she says, "this man here wants to examine me."
 
 
 13
 Tr. 138. When defense counsel first objected to that testimony as hearsay, the district court sustained the objection. Government counsel then laid a foundation for the testimony's admission by eliciting from the neighbor the fact that Mrs. Paonessa was "very upset and nervous" when she made the statement to her neighbor. Government counsel asked the court therefore to admit the neighbor's testimony under the excited utterance exception to the hearsay rule. At that time, the court admitted the testimony.
 
 
 14
 This court may reverse the trial court's admission of evidence only if the trial court abused its discretion. Martin v. Leaver, 666 F.2d 1013, 1020 (6th Cir.1981), cert. denied, 456 U.S. 962 (1982). The admission of the neighbor's testimony here was not an abuse of discretion. Fed.R.Evid. 803(2) provides that the hearsay rule does not exclude:
 
 
 15
 Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
 
 
 16
 Since Mrs. Paonessa's statements to her neighbor were made at the time of defendant's startling request and were made while Mrs. Paonessa was under the stress caused by the request, the statements were properly admissible under 803(2).
 
 
 17
 Defendant's final argument seems to be that his admission to visiting Mrs. Paonessa was coerced by false promises that he would not be prosecuted. During the course of the interviews with defendant on October 31 and November 8, the Special Agent asked defendant questions about his mental health. Defendant said that he was seeing someone about his mental problems, and the detective indicated that it was good that he was getting help. Defendant argues that all this talk about getting help from the mental health system led him to believe that he was being investigated only to determine his need for mental health counseling.
 
 
 18
 Defendant's own testimony belies his argument, for he twice testified that on the day of the line-up, November 8, he felt that he was under arrest. On October 31, he refused to be photographed. On both October 31 and November 8, defendant signed waiver forms after they had been read to him. These forms specifically declared that his statements could be used against him in court. The Special Agent testified that he told defendant several times that he was under investigation for committing a felony. The Agent testified that he never said that criminal charges would be dropped if defendant obtained counselling. Based upon these facts the district court held that,
 
 
 19
 the defendant was not under any notion that he would not be prosecuted and I am persuaded that he knew precisely what would occur when he signed on two different occasions his waiver of rights and it's very clear to the court that he knew what those rights were.
 
 
 20
 Tr. 122. The evidence clearly supports the district court's finding that defendant's admissions were voluntarily made.
 
 
 21
 Accordingly, we AFFIRM the judgment below.