978 F.2d 1260
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory TAYLOR, Defendant-Appellant.
 No. 92-5120.
 United States Court of Appeals, Sixth Circuit.
 Nov. 5, 1992.
 
 Before KENNEDY and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Gregory Taylor appeals his conviction on two counts of possessing cocaine and cocaine base with intent to resell in violation of 21 U.S.C. § 841(a)(1). On appeal, the issues are (1) whether the district court abused its discretion in admitting hearsay evidence against defendant under the "excited utterance" exception to the hearsay rule, and (2) whether the record contains evidence sufficient to support defendant's conviction. For the reasons that follow, we affirm.
 
 I.
 
 2
 On February 9, 1991, officers of the Memphis Police Department executed a search warrant at 4245 Tomahawk, Memphis, Tennessee. The circumstances of the entry of the police officers were described by Officer Kitsmiller as follows:
 
 
 3
 Q. Officer Kitsmiller, did you execute a search warrant at 4245 Tomahawk on February 9, 1991?
 
 
 4
 A. Yes, sir.
 
 
 5
 Q. Who was present at that address when you executed it, the people in the house?
 
 
 6
 A. Deborah Newsom, I believe her first name is Sandra Leverson, Quinton Leverson and four or five other small children.
 
 
 7
 Q. How many officers were involved in executing the search warrant?
 
 
 8
 A. Six.
 
 
 9
 Q. What were you attired in when you went in there?
 
 
 10
 A. Gray jackets, bullet-proof vests, guns, had a ram and a pry bar.
 
 
 11
 Q. Did all the officers go in the house at once?
 
 
 12
 A. Yes, sir.
 
 
 13
 Q. Did you have radios on?
 
 
 14
 A. Yes, sir.
 
 
 15
 Q. Were those radios turned on?
 
 
 16
 A. Yes, sir.
 
 
 17
 Q. Could you hear the radio transmissions?
 
 
 18
 A. I could hear mine.
 
 
 19
 Q. When you went in the house, what did you do with the children?
 
 
 20
 A. They were all basically by the door. We just had everybody stand up.
 
 
 21
 J.A. 74-75.
 
 
 22
 One of the children present at the time of the raid was Quinton Leverson, seven years of age. After ordering everyone to stand up, Officer Kitsmiller opened a conversation with Ms. Newsom which he recounted as follows:
 
 
 23
 Q. When you went in the house, what did you do with the children?
 
 
 24
 A. They were all basically by the door. We just had everybody stand up.
 
 
 25
 Q. Did you talk to Ms. Newsom?
 
 
 26
 A. Yes, sir.
 
 
 27
 Q. What was the first thing you asked her?
 
 
 28
 A. Where was Greg?
 
 
 29
 Q. What did she say?
 
 
 30
 A. Said he wasn't there.
 
 
 31
 Q. Did you ask any questions about controlled substance?
 
 
 32
 A. Yes, sir. I said, does he have any dope here?
 
 
 33
 Q. What did she say?
 
 
 34
 A. That is when Quinton interjected. Quinton said, I know where his dope is. I said, where is it? He said, I'll show you. He took us to the northwest bedroom, pointed up into the closet and said, he has a whole bunch of dope in that closet.
 
 
 35
 J.A. 75.
 
 
 36
 Quinton Leverson led the officers to a bedroom in the house and pointed out the closet he believed to contain the "dope." The officers searched the closet and found 178 grams of cocaine. A search of the house resulted in the further seizure of another bag of cocaine, two sets of scales, a "rocking tube," plastic baggies with white residue in them, and various documents including a telephone bill addressed to defendant at 4245 Tomahawk, a traffic ticket in defendant's name showing his address as 4245 Tomahawk, and a receipt for lumber purchased by defendant. The proof at trial also established that defendant rented the premises from Walter Scott and had done so continuously since November 1990.
 
 
 37
 While Officer Kitsmiller and his five companions searched the premises at 4245 Tomahawk, two other officers were dispatched to 1860 Swift, Memphis, Tennessee, with instructions to locate defendant. When they arrived at 1860 Swift, they observed a blue Corvette parked in front of the house. Defendant Taylor and a woman left the house and drove away in the Corvette. Police officers stopped the car and detained defendant, who was driving. In the car police discovered a scanner tuned to their radio frequency. On defendant's belt was a beeper.
 
 
 38
 A key from a key ring taken from the Corvette fit the lock at 1860 Swift, and officers used it to gain access to the residence, which they then searched. Cocaine base was discovered under a sofa cushion. Also found was a pay stub belonging to defendant Taylor. Further investigation revealed that defendant Taylor rented the premises from Rosalyn Buckley and that he had done so since 1989. Ms. Buckley had personally collected the rent from defendant in February and March, 1991. Both the telephone and the utilities were subscribed for in defendant's name.
 
 
 39
 At the trial of the case, the district court conducted a hearing outside the presence of the jury to determine whether Quinton Leverson, who was offered by the government as a witness, was competent to testify. The court found him incompetent to testify because he could not understand the consequences of telling a lie in the context of a courtroom and because his memory seemed to have failed him.
 
 
 40
 On the following day of trial, the government tendered the testimony of Officer Kitsmiller to the effect that Quinton Leverson had interrupted the officer's conversation with Ms. Newsom and interjected that he knew where defendant kept his cocaine. After another hearing out of the presence of the jury, the court held the proposed testimony to be admissible under Federal Rule of Evidence 803(2), relating to excited utterances. Over defendant's objection, Officer Kitsmiller then testified before the jury as follows:
 
 
 41
 Q. How many officers accompanied you to execute the warrant?
 
 
 42
 A. Myself and five others.
 
 
 43
 Q. How were you and the other officers attired?
 
 
 44
 A. We had raid jackets on, Police written on the chest, bullet-proof vests, guns, guns drawn when we went in, wearing holsters.
 
 
 45
 Q. How did you gain entrance?
 
 
 46
 A. The door was open. We had a large battering ram and pry bar, but the door was unlocked.
 
 
 47
 Q. Did you rush in?
 
 
 48
 A. Yes, sir.
 
 
 49
 Q. Who was present at the house when you went in?
 
 
 50
 A. Deborah Newsom and Sandra Leverson were the two adults at the house, a seven year old boy, Quinton Leverson, and I believe four or five other small children.
 
 
 51
 Q. Did you secure the premises when you went in?
 
 
 52
 A. Yes sir. We made sure no one else was in the rest of the house.
 
 
 53
 Q. Where did you put the children and the two adults?
 
 
 54
 A. They were in the first room we came in. We came through the carport door. They were in the first room when we went in. We yelled for them to stand up and basically secured them in the room there.
 
 
 55
 * * *
 
 
 56
 Q. Officer, did you have an occasion to ask Ms. Newsom if she knew where Greg's dope was at?
 
 
 57
 A. Yes, sir.
 
 
 58
 Q. What happened after that?
 
 
 59
 A. That is when Quinton Leverson, the seven year old, said, I know where his dope's at.
 
 
 60
 Q. Did anything happen after that involving Quinton?
 
 
 61
 A. Yes, sir, I said, where is it? He said, I will show you. He took us to the northwest bedroom, pointed up to the closet and said, there is a whole bunch of dope up there. That is when we found the 178 grams of white powder.
 
 
 62
 Q. When you had the conversation with Ms. Newsom, where was Quinton Leverson in relation?
 
 
 63
 A. I was facing Ms. Newsom. Quinton was to my left about two feet away.
 
 
 64
 J.A. 83-86.
 
 
 65
 At the conclusion of the trial, the jury returned guilty verdicts on both counts of the indictment, and the district court sentenced defendant to 135 months imprisonment. This timely appeal followed.
 
 II.
 A.
 
 66
 Defendant argues that the district court erred in admitting into evidence the portion of Officer Kitsmiller's testimony which related Quinton Leverson's assertion that he knew where defendant's cocaine was stored. Because the district court's conclusion concerning the excited utterance requires factual findings with regard to the circumstances surrounding the statement and the speaker's state of mind, we will review the district court's findings of fact under the clearly erroneous standard. However, its legal conclusions are reviewed de novo. United States v. Gessa, No. 90-5825/5903, slip op. at 5-6 (6th Cir. Aug. 7, 1992) (en banc).
 
 
 67
 The parties agree that the portion of Quinton Leverson's statement containing an assertion about the ownership of the cocaine in question was hearsay when admitted through the testimony of Officer Kitsmiller. The district court admitted the testimony under Fed.R.Evid. 803(2) which exempts excited utterances from the usual exclusionary operation of the hearsay rule. Rule 803(2) defines an excited utterance as
 
 
 68
 [a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
 
 
 69
 Before admitting this proof, the district court took a proffer of the proposed testimony of Officer Kitsmiller outside the presence of the jury. It then made the following specific findings:
 
 
 70
 The Court will grant the motion to allow the officer to testify concerning the statements made by the child. The Court finds that the events of having a number of police officers in the kind of clothing and guns drawn making an entry to execute a search warrant is certainly an occasion on which nervous excitement would be generated and was in this particular instance. I further find under the time circumstances that have been indicated in this testimony there was not time for the child to have contrived or intentionally misrepresented any facts he stated, and, third, I find that the child was acting under stress and excitement caused by the execution of the search warrant. In sum, I'm finding that the statement by the child is a reliable statement and that the sense [sic] he is unavailable to testify in light of my ruling yesterday, the testimony is admissible under 803(2) of the Federal Rules of Civil Procedure [sic] and not in violation of the confrontation clause.
 
 J.A. 82-83.[1]
 
 71
 Defendant's argument on appeal is a narrow one. He does not argue that the hearsay statement in question was inherently unreliable, realizing as he must that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." Ohio v. Roberts, 448 U.S. 56, 66 (1980). Instead, defendant argues only that "the trial court improperly determined that the statement made by Quinton Leverson qualified as an excited utterance." Reply Brief of Appellant at 1. In particular, defendant contends that "the court made no findings as to Leverson's condition at the time" and that there was no evidence of Leverson's physical or mental condition at the critical moment. Reply Brief of Appellant at 3.
 
 
 72
 In Haggins v. Warden, Fort Pillow State Farm, 715 F.2d 1050, 1057 (6th Cir.1983), cert. denied, 464 U.S. 1071 (1984), this court listed the prerequisites for the admission of excited utterances as exceptions to the hearsay rule:
 
 
 73
 Three elements are necessary for the admission of an exited utterance. First, there must be an event startling enough to cause nervous excitement. Second, the statement must be made before there is time to contrive or misrepresent. And, third, the statement must be made while the person is under the stress of the excitement caused by the event.
 
 
 74
 In the present case, the district court specifically found the existence of each of the three elements mentioned in Haggins. Contrary to defendant's assertion, the district court did make findings as to Quinton Leverson's condition at the time he made his statement, finding particularly that the child was "under stress and excitement caused by the execution of the search warrant." J.A. 82-83. Also contrary to defendant's argument, there is evidence, albeit circumstantial, of Quinton Leverson's physical and mental condition at the time he made his statement. Officer Kitsmiller described the situation in the room at the point just before Quinton Leverson spoke up:
 
 
 75
 Q. He was calm and deliberate?
 
 
 76
 A. Not really. All the kids were dancing around. Ms. Leverson was shaking. We told her to sit down. Probably the coolest one in there was Deborah Newsom.
 
 
 77
 J.A. 77.
 
 
 78
 Moreover, six police officers with guns drawn, wearing flak jackets and carrying a battering ram and crowbar had just rushed into the room and ordered everyone to stand up. It may reasonably be inferred that a seven-year-old boy would be excited by this sudden and unusual commotion.
 
 
 79
 The district court carefully conducted an appropriate hearing outside the presence of the jury to determine whether the proffered hearsay was admissible under the excited utterance exception to the hearsay rule. After hearing testimony, the court specifically found all of the elements that are prerequisites to the admission of hearsay under the excited utterance exception. Thus, we hold that the facts in this case support the district court's findings as to each of these elements, and, therefore, the district court committed no error in admitting the evidence in question.
 
 B.
 
 80
 Defendant also argues that "the Government did not present sufficient evidence to connect him to houses at 4245 Tomahawk and 1860 Swift." Brief of Appellant at 15. He contends, therefore, that the district court erred in failing to grant his motion for judgment of acquittal. In reviewing challenges to the sufficiency of the evidence, this court asks the question "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 81
 There is ample evidence in this case from which a rational jury may have concluded that the cocaine and crack found in the residences was owned or controlled by defendant. As to the 4245 Tomahawk residence, the proof showed that defendant had rented the premises since 1990 and had telephone service in his name. His personal papers were found in the same bedroom in which cocaine was discovered, and there was evidence from Quinton Leverson that the cocaine found in that bedroom belonged to defendant.
 
 
 82
 As to the 1860 Swift residence, the evidence established that defendant rented the premises and subscribed to the utilities. He was seen leaving this location shortly before crack cocaine was discovered concealed in a sofa inside. A key in his possession unlocked the entrance to the house, and a pay stub identifying defendant was found inside.
 
 
 83
 From this evidence, we conclude that the jury could rationally have concluded that defendant had at least constructive possession of the controlled substances. Therefore, the district court did not err in refusing to grant defendant's motion for judgment of acquittal.
 
 III.
 
 84
 For the reasons stated, the judgment of the district court is AFFIRMED in all respects.