UNITED STATES of America,
Plaintiff–Appellee,

v.

Donteony SCOTT, Defendant–
Appellant.

No. 02–1139.

United States Court of Appeals,
Sixth Circuit.

July 10, 2003.

Before KEITH, MOORE, and
GIBBONS, Circuit Judges.

**OPINION**

MOORE, Circuit Judge.

Defendant–Appellant Donteony Scott
("Scott") appeals his conviction following a

jury trial for one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On appeal, Scott argues that the district court improperly admitted Officer Stephen Scelfo's ("Scelfo") hearsay statement over Scott's objection. First, Scott contends that the hearsay evidence did not constitute an excited utterance under Federal Rule of Evidence 803(2). Second, he asserts that even if the statement could be classified as an excited utterance, it nonetheless should have been inadmissible pursuant to Rule 403's balancing of probative value against unfair prejudice. Scott also argues that the district court's acceptance of Scelfo's hearsay statement resulted in a violation of Scott's Sixth Amendment right to confront witnesses against him. We now **AFFIRM** the district court's decision.

## I. BACKGROUND

At 11:30 p.m. on May 29, 2001, Detroit Police Officers Scelfo and Melissa Taylor ("Taylor") noticed a Pontiac Bonneville parked illegally in a handicap-parking space with its engine running. Because a handicap permit was not visible, the officers ran a registration check on the vehicle which revealed that the license-plate number was unregistered. Scelfo and Taylor approached the vehicle to question its driver, Scott. After Scott was unable to produce a valid driver's license, Scelfo ordered him out of the car. Scott exited the vehicle and then immediately fled on foot. Scelfo chased Scott, and while in pursuit, radioed for backup assistance.

Responding within one minute of Scelfo's backup assistance call, Officer Richard Firsdon ("Firsdon") was the first to arrive on the scene. According to Firsdon's trial testimony, when he arrived on the scene Scelfo was in the process of apprehending and handcuffing Scott. Firsdon testified that Scelfo was "panting, out of breath,

[and] excited from pursuing [Scott]." Joint Appendix ("J.A.") at 212 (Trial Tr., Firsdon Direct Exam.). After Firsdon had been on the scene for thirty seconds or so, Scelfo informed him that during the chase he saw Scott throw a firearm in the yard of a nearby residence on Trumbull Road. Once Scott was secured, the officers went to the area where Scelfo indicated the gun was tossed, approximately fifty to seventy yards from the location of the arrest, and Firsdon recovered a .38–caliber revolver.

The officers arrested Scott on state charges of carrying a concealed weapon and having improper license plates, but these state charges were dropped and the federal prosecution under § 922(g) proceeded. On July 25, 2001, the grand jury returned a one-count indictment charging Scott with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Notably, the government's list of witnesses, filed five days before the scheduled trial, did not include Scelfo. The jury trial was held on October 22, 2001. In the government's opening statement, the Assistant United States Attorney explained Scelfo's absence by informing the court that Scelfo no longer worked with the Detroit Police Department and that he had moved out of state.

The district court determined that it would conduct a hearing, outside the presence of the jury, to assess whether Firsdon could testify as to what Scelfo said about Scott throwing a gun. At the hearing, Firsdon testified that he arrived on the scene within one minute of Scelfo's call for backup. He also testified that approximately thirty seconds after he arrived and while Scelfo was still excited from apprehending and handcuffing Scott, Scelfo informed him that Scott discarded a weapon during the chase. Scott argued to the district court that this statement was hear-

say and could not be classified as an excited utterance. The district court disagreed and determined that not only did Scelfo's statement that Scott threw a gun classify as an excited utterance under Rule 803(2), but also Scelfo's statement that the gun recovered by Firsdon looked like the one he saw Scott throw earlier classified as a present sense impression under Rule 803(1). The district court overruled Scott's other objections that the hearsay was inadmissible under Rule 403 and that admission of this evidence violated the Confrontation Clause of the Sixth Amendment.

At trial, Firsdon was called as a government witness to testify regarding the events surrounding Scott's arrest. On direct examination, the government asked Firsdon to explain to the jury what Scelfo told him when he arrived on the scene as backup assistance. Scott's counsel objected to the government's question and the district court overruled the objection. Responding to the government's question, Firsdon testified that Scelfo told him "that when [Scelfo] was chasing [Scott] in front of a house on Trumbull that [Scelfo] observed [Scott] reach into his ... pocket ... and pull out a black colored handgun and throw it to the ground." J.A. at 213 (Trial Tr., Firsdon Direct Exam.). Although at trial a police officer testified that no fingerprints were found on the gun. the jury returned a guilty verdict the very next day. On January 24, 2002, the district court held a sentencing hearing at

which Scott received a seventy-five month sentence and three years of supervised release. Scott filed this timely appeal.

## II. ANALYSIS

### A. Standard of Review

The Supreme Court, in a sweepingly broad statement, instructed appellate courts to review a district court's evidentiary rulings for an abuse of discretion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). However, Scott suggests that de novo review is appropriate when the court considers whether introduced evidence is hearsay. Appellant's Br. at 9 (citing *United States v. Mays*, 69 F.3d 116, 120 (6th Cir.1995)). Although this court previously reviewed hearsay evidentiary rulings de novo, after *Joiner* this court reviews all evidentiary rulings for an abuse of discretion. *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716–17 (6th Cir.1999) ("It is not clear to us how a trial court would have discretion to ignore the definition of inadmissible hearsay in Federal Rule of Evidence 801 or the foundation requirements for establishing exceptions to the hearsay rule under Federal Rules of Evidence 803 or 804, but it is not this court's privilege to question why." (internal quotation marks omitted)).[1] When reviewing a district court's factual determinations: "[a] court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only

---

1. We recognize that a three-part inquiry involving the clearly-erroneous, de-novo, and abuse-of-discretion standards can be appropriate for those evidentiary decisions involving mixed questions of law and fact. *See United States v. Parrish*, No. 98–6379, 2000 WL 1888685, at *3 (6th Cir. Dec.19, 2000) (unpublished opinion) (applying the clearly-erroneous standard to the district court's factual determinations, the de-novo standard to its legal determinations, and the abuse-of-dis-

cretion standard to determine whether the evidence was more probative than unfairly prejudicial); *see also United States v. Hurst*, 228 F.3d 751, 756 n. 1 (6th Cir.2000) (noting that a ruling on a motion to suppress is more than an evidentiary ruling because it involves mixed questions of law and fact which require a district court to do more than simply interpret the Federal Rules of Evidence; instead the court must make findings of fact and conclusions of law).

if the finding were clearly erroneous." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). With respect to legal determinations, "[a]n appellate court would be justified in concluding that, in making [legal errors], the district court abused its discretion." *Id.* at 402; *see also Huey v. Stine*, 230 F.3d 226, 228 (6th Cir.2000) ("A court also abuses its discretion where it improperly applies the law or uses an erroneous legal standard." (internal quotation omitted)). Thus, we analyze this case employing our usual fact and law distinction.

## B. Hearsay

At an evidentiary hearing, outside the presence of the jury, Firsdon was called to proffer the hearsay testimony that the government intended to present at trial. Firsdon told the district court that he was less than half a mile away when his radio picked up Scelfo's call for backup assistance. Due to his close proximity, Firsdon responded to Scelfo's call within one minute. The first statement Scelfo made to Firsdon occurred approximately thirty seconds after Firsdon arrived. Firsdon testified that "[a]fter [Scelfo] had [Scott] arrested, I approached, asked him what was going on, what he's chase [sic] him for. He said when he was chasing him he saw him pull a gun out of his pocket and throw it." J.A. at 153 (Trial Tr.). The government sought permission to introduce this statement at trial not to prove the truth of the matter asserted–*i.e.*, that Scelfo saw Scott toss a gun – but instead to "explain the witness' actions" and to "construct a sequence of events." J.A. at 141 (Trial Tr.). Without commenting on the government's theory for introducing Scelfo's statement into evidence, the district court allowed the statement to be admitted as an excited utterance, an exception to the hearsay rule, "for the very purpose of proving that Mr. Scott threw a gun." J.A. at 163 (Trial Tr.).

Federal Rule of Evidence 801(c) defines "hearsay" as "a statement. other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Hearsay exceptions are provided in the evidentiary rules for certain situations when it is believed that the out-of-court statement has sufficient indicia of reliability such that the protection provided by the hearsay rule is unnecessary. One such exception exists for an "excited utterance," which is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed.R.Evid. 803(2). The premise behind this exception to the general rule excluding hearsay testimony is that an excited utterance "contain[s] inherent guarantees of truthfulness" because the statement was made by someone while still under the stress of excitement from a startling event before he or she had an opportunity to reflect on the event or fabricate the details. *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir.1983), *cert. denied*, 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984); *see also Idaho v. Wright*, 497 U.S. 805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) ("such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous.").

Three elements are needed to establish that a statement is an excited utterance: (1) "an event startling enough to cause nervous excitement;" (2) "the statement

must be made before there is time to contrive or misrepresent;" and (3) "the statement must be made while the person is under the stress of the excitement caused by the event." *Haggins,* 715 F.2d at 1057. Because there is no bright-line rule defining the parameters of each element, the courts evaluate these factors "on a case by case basis." *Id.* We previously have stated that we are most concerned with "the ultimate question" of "whether the statement was the result of reflective thought or whether it was a spontaneous reaction to an exciting event." *Id.* at 1058 (quotation omitted); *see also United States v. Schreane,* 331 F.3d 548, 563 (6th Cir. 2003) ("the dispositive inquiry we must make is . . . whether [the declarant's] statement was made under genuine conditions of excitement that removed the elements of reflection and contrivance from his words."). While the time between the startling event and the statement is often an extremely relevant piece of information for assessing whether the statement was made while the declarant still was under the stress of the exciting event, the time element yields to the most important consideration which is whether the statement remained spontaneous. *Haggins,* 715 F.2d at 1057–58 (noting that when considering the length of time, a court can take into consideration "other factors that affect spontaneity . . . [including] the declarant's age or physical or mental condition").

The district court determined that the statement, while hearsay, was properly admissible as an excited utterance. On appeal, Scott argues first that Scelfo's foot chase of Scott was not a startling event for Scelfo because a police officer is faced with these types of high-intensity situations regularly. Scott next argues that even if the foot chase could be considered a startling event for Scelfo, Scelfo made this statement after the stress of excitement had passed. Scott contends that because

the statement was made thirty seconds after Firsdon arrived, and thus potentially minutes after the gun was tossed, Scelfo no longer was excited and had time to misrepresent the facts. Ultimately, the district court disagreed and determined that "a police officer chasing somebody who has just put up a struggle in the effort to handcuff him and to have been seen throwing a gun" clearly was still under the physical and emotional stress of the event. J.A. at 163 (Trial Tr.). At oral argument. Scott's counsel suggested that the potentially great time-delay was controlling on whether the statement could be classified as an excited utterance.

■ Because the district court did not abuse its discretion when it reasoned that Scelfo's chase of a fleeing person is a startling event and that Scelfo was still under the stress of excitement at the time he made his statement to Firsdon, we affirm the district court's decision to admit this hearsay statement as an excited utterance. Admittedly, statements from a widely-recognized evidence treatise lend some validity to Scott's argument that a police officer is less likely to be startled by a foot chase. *See* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.04[2][b] (2d ed.2003) ("[w]hether [ ] events qualify as startling depends upon assessment of their shock value on the declarant."). However, we agree with the district court's rejection of the blanket proposition that a police officer who chases a potential criminal suspect, sees the suspect throw a gun, and then struggles to restrain the suspect is not susceptible to the excitement stemming from these events simply because officers face these situations more often than the average citizen. And while cases from this circuit also can be read to suggest that an event's startling nature has a lot to do with

one's susceptibility to excitement,[2] there is no authority for the proposition that officers cannot be excited when engaged in a criminal chase. Common sense leads us to the conclusion that a foot chase precipitated by a driver fleeing after a police officer's approach of an unregistered, illegally parked car to ask the driver for his license is a sufficiently startling event to cause "nervous excitement." *Haggins,* 715 F.2d at 1057. Because Scelfo's statement was uttered while he was still panting and excited from his pursuit of Scott, it was not an abuse of discretion for the district court to conclude that Scelfo's chase and subsequent arrest of Scott caused Scelfo to be under the stress of excitement when he made the challenged statement to Firsdon.

Moreover, while the passage of time between the startling event and the statement is relevant to whether the declarant still was under stress, it is not dispositive. Weinstein & Berger, *supra,* at § 803.04[4]. In *United States v. Golden,* 671 F.2d 369 (10th Cir.), *cert. denied,* 456 U.S. 919, 102 S.Ct. 1777, 72 L.Ed.2d 179 (1982), the Tenth Circuit admitted a hearsay statement as an excited utterance even though it was made by the victim of police brutality fifteen minutes after the event had taken place. *Id.* at 371. The victim was pulled over by the defendant officer for allegedly running a red light and after some discussion the defendant officer struck the victim in the eye with his flashlight. The court concluded that the fif-

teen-minute delay was not too remote from the incident when immediately after the incident, the victim got in his car and drove at speeds of 120 mph until he reached his grandmother's house, where he immediately told her of the incident. Because there was no reason to think that the victim was not still under the stress of excitement from the event, the court concluded that the statement was properly admitted as an excited utterance. *Id.*

In the present case, the passage of time was hardly the significant delay that Scott would have this court believe. As Firsdon's testimony indicates, Firsdon arrived within one minute of Scelfo's call for assistance to find Scelfo struggling to handcuff Scott, panting and out of breath, and visibly excited. Then, within thirty seconds of Firsdon's arrival and shortly after Scott was secured, Scelfo told Firsdon about the discarded weapon. As in *Golden,* the activity transpiring between the event and the statement was still connected with, and part of, the stress-causing event. Although the statement was not blurted out simultaneously with the event, the stress of the event had not dissipated by the time Scelfo made the statement a couple of minutes later, as was evident from his excited physical state. Under these circumstances, it was not an abuse of discretion for the district court to determine that Scelfo made the statement while still under the stress of the startling event and before sufficient time passed in which he

**2.** Some examples of situations that have been considered startling events in this circuit include: (1) statements made while witnessing a domestic dispute between the declarant's parents, *United States v. Price,* No. 02–5313, 2003 WL 202165. at *2, 58 Fed.Appx. 105 (6th Cir. Jan. 28,2003) (unpublished order); (2) statements made by a child after witnessing her mother's boyfriend slam her baby sister into a wall, *Johnson v. Wolfe,* No. 00–4509, 2002 WL 1869443, at * 7, 44 Fed.Appx. 702 (6th Cir. Aug.13, 2002) (unpublished opinion); (3) statements made by a young boy when armed officers entered his home to execute a search warrant, *United States v. Taylor,* No. 92–5120, 1992 WL 322369, at *3 (6th Cir. Nov.5, 1992) (unpublished opinion); and (4) statements made by a woman after a man unknown to her, posing as a Social Security Administrator, requested that she submit to a physical exam, *United States v. Reich,* No. 85–1993, 1987 WL 37170, at *3 (6th Cir. April 22, 1987) (unpublished opinion).

could have reflected on the situation or contrived a story.

Scott's final rule-based attack on the admissibility of Scelfo's statement is that the statement was inadmissible under Federal Rule of Evidence 403. The essence of Scott's claim is that, because this statement was allegedly the only evidence connecting Scott with the gun, this statement was extremely prejudicial. "The admission of evidence challenged as prejudicial is reviewed for an abuse of discretion, in the light most favorable to the proponent." *United States v. Bonds*, 12 F.3d 540, 574 (6th Cir.1993).

■ Rule 403 states that: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. Indeed, the statement was prejudicial to Scott because without it the government

may have had more difficulty in securing a conviction under § 922(g). Nevertheless, Rule 403 requires that the prejudice be "unfair" and that it "substantially outweigh" the probative value. As we have stated previously, "[u]nfair prejudice, as used in Rule 403, does *not* mean the damage to a defendant's case that results from the legitimate probative force of the evidence: rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir.1988) (quotation omitted) (noting that examples of improper bases include jury hostility or jury sympathy). Moreover, any prejudice resulting from this statement did not "substantially outweigh" the probative value, when another equally incriminating hearsay statement was admitted as a present sense impression, and Scott failed to challenge its admission on appeal.[3] In this situation, it was not an abuse of discretion for the district court to have found the probative value of Firsdon's testimony regarding

---

3. On this appeal, Scott does not challenge the admission of another hearsay statement introduced by Firsdon which was used to prove that Scott possessed the gun during the chase. At the evidentiary hearing, Firsdon testified that after he used his flashlight to illuminate the weapon on the ground, Scelfo responded that the weapon "looks like the gun that the individual threw." J.A. at 149 (Trial Tr., Firsdon Cross Exam.). The trial judge determined that this statement, if deemed hearsay, would be admissible under the present-sense-impression exception to the hearsay rule. At trial, Firsdon testified before the jury that when he discovered the gun in front of Trumbull Road residence "Officer Scelfo indicated to [him] that [it] appeared to be the gun that [Scelfo] had seen thrown." J.A. at 217 (Trial Tr., Firsdon Direct Exam.). Scott's objection was overruled, and he does not pursue this issue on appeal.

The Federal Rules of Evidence define a "present sense impression" as "a statement describing or explaining an event or condition made while the declarant was perceiving the

event or condition, or immediately thereafter." Fed.R.Evid. 803(1). The government claims that even if we were to decide that the district court erred in admitting Scelfo's challenged statement as an excited utterance, such error was harmless because this alternative statement would have sufficed to prove the same fact – that Scott possessed a weapon during the chase. Indeed, the government raises a valuable point. As the Supreme Court stated in *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), "it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." *Id.* at 509. Because one factor in deciding whether an error is harmless beyond a reasonable doubt is whether the evidence is cumulative, *Stapleton v. Wolfe*, 288 F.3d 863, 867–68 (6th Cir. 2002), even if the district court erroneously admitted Scelfo's excited utterance, any error would be rendered harmless by the admission of his present-sense impression identifying the gun retrieved as the one Scott threw.

Scelfo's statement that Scelfo saw Scott throw down his weapon more substantial that its potential for "unfair prejudice."

## C. Confrontation Clause

Scott's final challenge involves the district court's admission of Scelfo's hearsay statement as an excited utterance in violation of Scott's right to confront witnesses against him pursuant to the Sixth Amendment. The Sixth Amendment to the United States Constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. Scott argues that the government's failure to produce Scelfo for cross-examination and to show Scelfo's unavailability violated his rights under the Confrontation Clause.[4] In response, the government asserts that a showing of unavailability is not required.[5] "An appellate court reviews all evidentiary rulings – including constitutional challenges to evidentiary rulings – under the abuse-of-discretion standard." *Schreane*, 331 F.3d 548, 564 (citing *Joiner*, 522 U.S. at 141). As noted above, under this standard we will find an abuse of discretion if the district judge commits an error of law or a clear error in determining material facts.

■ We previously have stated, in response to a Confrontation Clause challenge to the admission of an excited utterance hearsay statement, that "[a] criminal defendant's right to confront witnesses is not violated by the introduction of hearsay testimony where either the hearsay statement 'falls within a firmly rooted hearsay exception," or where it is supported by 'a showing of particularized guarantees of trustworthiness.'" *Id.*, at 563 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)); *see also Haggins*, 715 F.2d at 1056 (stating that "a finding that a statement falls within a firmly rooted hearsay exception means that it contains sufficient reliability to satisfy the requirements of the confrontation clause"). While it is true that the Confrontation Clause is not identical to the hearsay rule, nonetheless because they " 'stem from the same roots' and are 'designed to protect similar values,'" there is some obvious overlap. *Haggins*, 715 F.2d at 1056 (quoting *Roberts*, 448 U.S. at 66).[6] Remarking on the origins of the excited-utterance exception to the hearsay rule in English common law as early as the late 17th century, the Supreme Court determined that, without a doubt, an excited utterance is a firmly rooted hearsay exception. *White v. Illinois*, 502 U.S. 346, 356 n. 8, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (noting also that this exception is contained in the Federal

4. Although Scott seems to suggest that unavailability is a hurdle that the government must meet, the Supreme Court has clarified that "unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding." *White v. Illinois*, 502 U.S. 346, 354, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (finding that unavailability need not be shown prior to introducing spontaneous, *i.e.*, excited utterance, hearsay statements).

5. The government also suggests that if Scott wanted to cross-examine Scelfo, Scott should

have himself subpoenaed Scelfo. To the extent this argument seeks to shift the burden to the defendant to call the one eyewitness to the crime, it contradicts the principles of our criminal justice system and we reject it.

6. However, the Supreme Court reminds lower courts that it has "more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception." *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

Rules of Evidence and in the rules of evidence of four-fifths of the states); *see also Schreane*, 331 F.3d 548, 563 (holding that an excited utterance "is without question a firmly rooted hearsay exception"). Moreover, the Supreme Court seemingly prefers a spontaneous statement because it can "carry more weight" than its in-court counterpart and because its "reliability cannot be recaptured." *White*, 502 U.S. at 355–56. "To exclude such probative statements under the strictures of the Confrontation Clause would be the height of wrongheadedness, given that the Confrontation Clause has as a basic purpose the promotion of the integrity of the factfinding process." *Id.* at 356–57 (quotation omitted). A statement admitted under a "firmly rooted" hearsay exception, such as an excited utterance, "is so trustworthy that adversarial testing can be expected to add little to its reliability." *Id.* at 357. In sum, then, because Scelfo's statement qualifies as an excited utterance "it carries sufficient indicia of reliability and trustworthiness" to bring the judicial inquiry to an end. *Schreane*, 331 F.3d 548, 563. Accordingly, Scott's Confrontation Clause challenge to the admission of Firsdon's hearsay testimony fails.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.